[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is a complaint in two counts. Count One alleges a constructive trust; Count Two alleges wrongful conversion. At issue are the proceeds of an insurance policy.
The plaintiff has pled in special defense that (1) The plaintiff's decedent retained ownership and control of the subject life insurance policy up to the date and time of death; (2) The plaintiff's decedent made no attempt to change the designation of the defendant as beneficiary of said life insurance policy even though it was exclusively within his power and control to do so; (3) At the time of the death of the plaintiff's decedent the defendant was the lawful beneficiary of the proceeds of said life insurance policy. CT Page 8615
The facts are as follows. The plaintiff is Brian L. Anderson, Executor of the Estate of Donald L. Anderson. The defendant is the ex-wife of the decedent Donald L. Anderson. The decedent and the defendant were married in November of 1978. This was the second marriage for both of them. They each had children from their first marriages. The decedent's children from his first marriage were Brian and Kathleen. After the marriage the decedent and defendant purchased a home in Somers, Connecticut where they lived along with the defendant's children until the decedent and the defendant divorced in November of 1992. The decedent died in 1995.
The Divorce Decree entered on November 17, 1992 incorporated as part of the Divorce Decree a Separation Agreement dated November 5, 1992.
Under the terms of the Separation Agreement each party waived periodic alimony, support and maintenance, past, present and future. In return for the husband transferring all of his right, title and interest in the Somers, Connecticut property by quitclaim deed to the defendant, the defendant was to pay to the decedent the lump sum of $7,000 within seven business days. In addition to the $7,000 lump sum the defendant was to give the decedent a mortgage deed and promissory note in the amount of $32,000 with no interest. The decedent was to receive this payment upon the occurrence of the first of four enumerated contingencies as follows: (1) the wife's sale; (2) on November 1, 1997; (3) if the marital home ceased to be the residence of the wife; (4) the remarriage of the wife.
Paragraph 4 of the Separation Agreement provided under part (A) that all furniture, furnishings and other articles of personal property have been divided, or will be divided, between the parties to their mutual satisfaction. Part (B) of paragraph 4 was as follows:
 "Except as otherwise provided by the terms of this agreement, each party expressly waives and relinquishes any and all claim, right, title and interest he or she may have, whether arising out of the marital relationship of the parties or otherwise, in and to any bank or investment accounts, certificates of deposits, trusts, securities, bonds, shares of stock, IRA, pension, annuity, or profit sharing plans, inheritances, past, present or future, or causes of action."
Other provisions in the agreement covered motor vehicles, "the husband to get the 1972 Ford Maverick, the wife to get the 1991 Toyota Corolla; health insurance, each to maintain his or her own health insurance coverage, except that the wife was to be entitled to cobra benefits as available through husband's employer; debts, the wife to be responsible CT Page 8616 for the American Express credit card debt, and except for that, each were to be solely responsible for their debts as reflected on their respective financial affidavits.
The decedent was the one who sued for divorce. He told his attorney on the occasions that he met with him that he felt bad about his drinking but was also dissatisfied with the number of people in the home. His wife's four daughters had been living in the house and two still remained. Initially when the decedent was divorced one of the two children of his first marriage, a 13 year old son, went to live with him. A daughter stayed with his first wife. The son subsequently moved out and went with the first wife. The decedent maintained contact with these children calling them and seeing them from time to time.
The decedent worked at the post office for a number of years. He was forcibly retired because of his drinking problem. The day he was retired he went home drunk and was told not to go back to work. He never did. Drinking had been a problem through both of his marriages.
At the time of the divorce, affidavits filed by the decedent and the defendant showed their respective income, expenses and assets. Among the assets listed on the decedent's affidavit was insurance with the postal service with a face value of $150,000 and insurance with Globe with a face value of $60,000. Both were listed as having no cash value. The defendant was named as beneficiary on both.
Following the divorce the decedent who was now living in Enfield was in touch with his son and daughter of his first marriage more often, mostly by phone but on occasion face to face. There were times when he sounded drunk but at other times appeared and sounded sober. On one of the occasions when the decedent called his daughter, Kathleen Anderson Longo, the decedent specifically mentioned insurance and told her there would be money from the post office. This call took place in October, 1994 one month after the birth of Kathleen's first child. The decedent also wrote to his daughter while she was in college. He told her he felt bad about his not being able to help with her education as he had helped to put one of his second wife's children through school.
The decedent had left a will naming his son Brian Anderson executor. The decedent had told Brian several times on different occasions that Brian and Kathleen were beneficiaries of his insurance policy. On one of these occasions Brian was visiting with his father at his Enfield home on School Street. Upon the death of his father, Brian as executor pursued the insurance claim, contacting the insurance company and notifying the company of his potential claim, his claim being that the insurance proceeds were payable to the estate and that he and his sister were the CT Page 8617 two named beneficiaries of the estate. Brian relied on his father's statements after the second divorce and before his father's death. Even though the decedent drank his son and daughter had seen him when he was drunk and when he was sober and had talked to him when he was sober and when he was drunk. They could therefore tell when he was sober. He was sober when he talked about they being the ones to receive the insurance benefits.
A neighbor of the decedent who lived across the street from the Anderson home in Somers bumped into the decedent in a parking lot a year after he had moved out. He was not sober. However, during the last year of his life he became ill and his drinking was more in control. One of the times he talked to one of his children he had not had a drink in several weeks.
The defendant did not expect to receive any life insurance proceeds and was in fact in complete shock when she received the letter from the insurance company advising her that she was the named beneficiary of the policy proceeds of $102,000. Up to that time she had no information that she was to be the recipient of any insurance policy taken out by the decedent. She had not paid any insurance premiums.
The plaintiff claims a constructive trust as to the insurance proceeds of $102,000. "A constructive trust arises `contrary to intention and in invitum, against one who, by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds legal title to property which he ought not, in equity and good conscience, hold and enjoy. (citations omitted)." Zack v. Guzauskas,171 Conn. 98, 103, 368 A.2d 193 (1976). "A constructive trust arises where a person who holds title to property is subject to an equitable duty to convey it to another on the grounds that he would be unjustly enriched if he were permitted to retain it.' (Citations omitted)" Brownv. Brown, 345, 349, 460 A.2d 1287 (1983).
It is clear from the Separation Agreement that the decedent and the defendant gave each other everything that they intended to. Additional entries on the typed copy show numerous penned entries dealing with money amounts, dates and interest. The defendant reviewed the Separation Agreement minutely with her attorney before signing it. Even though insurance was referenced on the decedent's financial affidavit there is no indication in the Separation Agreement that the defendant had any expectations relative to the insurance. Clearly she had none because nowhere in the agreement is there a mention of insurance. The decedent on the other hand knew he had insurance after his divorce and CT Page 8618 specifically referenced it on a number of occasions with his children Brian and Kathleen. Even though the decedent continued to drink after his divorce he had periods of sobriety and it was during these periods that he told these children about leaving his insurance to them. His will left everything to these children. It is unlikely because of his continuing problem with alcohol that he would have realized the need for a beneficiary change, if in fact he even remembered that his ex-wife, the defendant, was still the named beneficiary.
The defendant knew that under paragraph four (4) captioned PersonalProperty she waived any claim she might have whether arising from the marital relationship of the parties or otherwise. The defendant also knew that under paragraph ten (10) captioned Document Execution she agreed to execute from time to time, upon the request of the other, any and all further instruments in writing that are or may become necessary or reasonable to carry the agreement into effect according to its intent.
The defendant upon being notified by the insurance company that she would receive the proceeds of the decedent's life insurance made no inquiry as to whether she had a valid claim to these proceeds in view of the aforesaid waiver provision. The defendant knew how that provision was intended to work since she had occasion to act under it when she sold the Salem house. Even though she got the full proceeds from the sale of the house she turned over a portion of that amount as belonging to the decedent under the agreement. Here there was nothing in the agreement which entitled the defendant to the insurance proceeds, yet she took these proceeds and has kept them under her exclusive control. It is this act upon which the plaintiff bases his claim of willful and wrongful conversion for her benefit of his share of the proceeds that he is entitled to under the Federal Employee's Group Life Insurance Policy by reason of his beneficial interest therein.
"In order to establish conversion, the complaint must allege an unauthorized assumption and exercise of ownership over the personal property of another to the detriment of the owner. (citations omitted)."Uniguard Insurance Co. v. Tremont, 37 Conn. Sup. 596, 599, 430 A.2d 30
(1981). There are two general "classes of conversion: (1) that in which possession of the alleged converted goods is wrongful from the outset; and (2) that in which the conversion arises subsequent to an initial rightful possession." Coleman v. Frances, 102 Conn. 612, 615, 129 A.2d 718 (1925). In the second class possession, "originally rightful, becomes wrongful by reason thereafter of wrongful detention, or a wrongful use of the property, or the exercise of an unauthorized dominion over the property. In the last two groups of this class, the wrongful use and the unauthorized dominion, constitute the conversion; therefore, no demand for the return of the personal property is required." Id; Coleman at CT Page 8619 616.
The defendant contends that the key to both of the Plaintiff's theories of liability lies in the determination of the ownership of the proceeds from the life insurance policy. There is no question that the decedent was the owner of the policy and that as the owner of the policy had the power to designate to whom the proceeds should be paid upon the death of the insured party, in this case himself.
"As a general rule, a change of beneficiary of an insurance policy can be effected only by following the procedure prescribed by the policy. (citations omitted). There is a well recognized exception to this rule — that a change of beneficiary is effective when the insured has done all in his power to comply with the procedure set out in the policy but has failed because of some circumstance beyond his control. (citations omitted)" Aetna Life Ins. Co. v. Hartford National Bank Trust Co., 146 Conn. 537, 541, 153 A.2d 448 (1959).
The defendant is correct when she argues that there was no evidence offered at trial that the decedent did anything with the insurance company to change the beneficiary designation on the life insurance policy. However, this Court finds that the waiver provision in the Separation Agreement crafted at a time when in his 8 to 10 visits to his attorney he was sober, is a very substantial effort on his part to insure that his ex-wife, the defendant, got nothing more from him. Similarly, there is the provision that the defendant sign over as the occasion arose in the future any interest that she came into resulting from the marital relationship or otherwise. These provisions coupled with his statements to his children that they would get his insurance money evidence a clear intention on his part as to whom he wanted the proceeds of his insurance policy to go to.
There remains the question of whether the decedent did everything in his power to see that that result took place. The Court takes into consideration in addressing this question the fact that the decedent was an alcoholic, albeit with some periods of sobriety; that because of his drinking and failing health he might not have been able to follow through with the paper work to get the beneficiary changed from his ex-wife, if in fact, at this point, he was even aware that he had to do something more than he had already done in the Separation Agreement.
The court concludes that the defendant has proven by a preponderance of the evidence the imposition of a constructive trust on the proceeds of the insurance policy and, as well, a wrongful conversion as to those proceeds by the defendant. The court, in its decision, has addressed each of the claimed special defenses and has determined that even CT Page 8620 though the decedent was the owner in control of his insurance up to the time of death, and even though the decedent made no attempt to change the designation of the defendant as beneficiary on the policy, under the facts of this case as found by the court neither of these claims disproves the plaintiff's case. As to the defendant's claim that she was the lawful beneficiary, the facts as found by this court prove otherwise.
The court finds that the plaintiff has proven by a preponderance of the evidence the allegations of counts one and two. Judgment may enter against the defendant Elizabeth Anderson, in the amount of One hundred two thousand dollars ($102,000) together with simple interest on the conversion count at the rate of 8% per year beginning with the date of entry of this judgment.
Hennessey, J.